1

2

3

4

5

6

7

8

9                       UNITED STATES DISTRICT COURT

10

11                      NORTHERN DISTRICT OF CALIFORNIA

12

United States District Court
Northern District of California

13      CLARENCE WILLIAMS,

14            Plaintiff,                          No. C 19-02988 WHA

15         v.

16      UNITED AIRLINES, INC.,                    **ORDER DENYING MOTION**
                                                  **FOR SUMMARY JUDGMENT**
17            Defendant.

18

19          In this case for race discrimination and retaliation brought by an African American pilot

20   against United Airlines, United moves for summary judgment.  Our plaintiff is Clarence

21   Williams.  He has flown as a commercial airline pilot for over twenty years, including eleven for

22   United.  He was eventually promoted to fleet technical manager (FTM).  In 2017, he was forced

23   to choose between a Performance Improvement Plan (PIP) and a demotion to pilot.  When he

24   chose neither, he was demoted back to pilot (Williams Decl. ¶¶ 22–26, Williams Exh. 9 at 3).

25          Evidence of discrimination may be circumstantial or direct.  *See Wallis v. J.R. Simplot Co.*,

26   26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994).  A plaintiff may

27   establish a *prima facie* case of disparate treatment by presenting evidence that an "employment

28   decision was based on a discriminatory criterion illegal under the [Civil Rights] Act."  *Cordova*

*v. State Farm Ins. Companies*, 124 F.3d 1145, 1148–49 (9th Cir. 1997), *quoting International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 (1977).

With respect to the adverse employment action, this order holds that a jury could reasonably find that forcing Williams to choose between a PIP and a demotion constituted an adverse employment action. Contrary to *James v. C-Tran*, 130 F. App'x 156 (9th Cir. 2005), Williams submits evidence, discussed below, that imposing a choice of the PIP versus demotion represented unlawful discrimination and/or retaliation. In *James*, the appellant employee raised this issue for the first time on appeal, so the panel simply refused to entertain the argument. Moreover, *James* involved a bus driver. Airlines are vastly different. In no way does *James* stand for the proposition that a choice between a PIP and a demotion is never an adverse employment action. United's argument is rejected. A jury will have to decide.

The next element in consideration is whether there is sufficient proof of discrimination to go to the jury. Putting aside for the moment the 2016 "at the trough" evidence, there nevertheless is sufficient evidence to go to the jury.

Williams presents evidence that he was treated differently and that it was due to race. He states that Supervisor Cormican used demeaning language, which created a "hostile" work environment in July 2017 ("I'll sit next to Clarence in case I need to slap him around") and in September 2017 ("Think before you speak" and "Woah woah woah you didn't just hear" Williams say "that"). In addition, Cormican penalized Williams in his 2016 year-end report for failure to log a specific number of flights (monthly) on the 787 fleet. Cormican admits that when he assessed Williams' flight hours, he did not look at other FTMs' flight hours during the relevant period; nor has United asserted a standard number of hours it expects of FTMs. These omissions create a question for the jury as to whether Williams labored against tougher performance expectations than other FTMs (Cormican Jan. 22 Dep. at 82, Williams Exh. 10 at 6, Williams Exh. A ¶ 16, Williams Exh. 19, Cormican Decl. ¶ 4).

At least one other United employee has observed Williams receive what she believed to be race-based differential treatment. While investigating Williams' EEOC complaint, United sought information from Training Program Manager Mary Smith who worked at the Denver

United States District Court
Northern District of California

1    Flight Training Center.  She and Williams worked in close physical proximity in Denver.  Smith

2    wrote in an email to United,

3              I have seen & [sic] overheard Jay speaking to his team, who sit in the
              same area as I.  The way in which he has spoken to Clarence is
4              derogatory & demeaning in my opinion, in comparison to the way
              that he spoke to other members of his team.  This includes calling
5              Clarence into his office with a commanding voice vs asking other
              team members if they could please come to his office.
6

7    She believes differential treatment came "on the basis of race" (Williams Exh. 45).  She will

8    have to testify in person (not via the email) but the email is an adequate substitute for this

9    motion.

10         It is true that United has its side of the story on all of these points but a jury must decide

11    whether (or not) to believe it.

12         If the "back at the trough" monologue by Supervisor Weigland comes into evidence, there

13    will be even more evidence of discrimination and racial animus.  The same evidence listed

14    above would be sufficient to show pretext.  Additionally, Williams presents evidence of his own

15    communication skills and accomplishments; strong peer reviews and technical work; and

16    correspondence in which he disputes his alleged errors.  That is, even though United articulates

17    legitimate, non-discriminatory reasons for its adverse employment action, Williams' above

18    evidence would also serve to show that those reasons were pretext (Williams Exh. 19 at  1–2,

19    Williams Exh. 39 at 1, Williams Exh. 14 at 2, Weigland Jan. Dep. 89–92, Williams Decl. at

20    ¶¶ 35–36, Williams Exh. 35 at 1).

21         "The evaluation of a pilot's communication skills . . . requires a subjective evaluation of

22    the pilot's attitude, manner, tone, and other similar traits — evaluations that are inherently

23    subjective." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1123–24 (9th Cir. 2009).  Our

24    court of appeals has cautioned that the use of such subjective criteria (in the hiring context) is

25    "particularly susceptible to discriminatory abuse and should be closely scrutinized." *Warren v.*

26    *City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995) (citation omitted).  So too here.

27         United argues that by hiring First Officer Faye Matthews, who identifies as African

28    American in "part," it has raised an inference of non-discriminatory motivation.  United cites to

3

1   *Black v. Baxter Healthcare Corp.*, No. CV 93-4001 JGD (RNBx), 1996 U.S. Dist. LEXIS 22984

2   (C.D. Cal. Apr. 26, 1996) (Judge Jacqueline Nguyen), *aff'd* 129 F.3d 124 (9th Cir. 1997).  This

3   decision is not citable because it does not fall within our court of appeals' limited exceptions to

4   the rule against considering unpublished pre-2007 decisions.  *See* Fed. R. App. P. 32.1(a)(ii).

5          More importantly United's argument fails because, to show that Williams was treated less

6   favorably than his non-African American colleagues, he "need not show that he was replaced by

7   a member of a different race."  Rather, he must show that his demotion "occurred under

8   circumstances giving rise to an inference of discrimination."  *Aragon v. Republic Silver State*

9   *Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002), *as amended* (July 18, 2002) (citations omitted).

10  Nonetheless, Matthews' and Williams' biographies differ.  For instance, she was hired holding

11  the lower rank of first officer, not captain, and United has not established that she shares his

12  racial identity.  Most importantly, Williams' existing *prima facie* evidence of discrimination

13  outweighs any inference of non-discrimination United might raise by virtue of hiring another

14  African American professional, or so a reasonable jury could find (Williams Decl. ¶ 32, United

15  Exh. I at 28–29).

16         With respect to the retaliation claim, Williams must show that he engaged in protected

17  activity, that United subjected him to an adverse employment action and that there was a causal

18  link between the protected activity and United's action.

19         Williams engaged in protected activity by cooperating with another African American pilot

20  in that pilot's separate and earlier lawsuit against United.  A reasonable jury could conclude that

21  United decided to return Williams to the line as a result of that assistance.  On December 5,

22  2017, Supervisor Cormican sat for a deposition in the other African American pilot's

23  discrimination lawsuit against United.  From the questioning, Cormican could tell that Williams

24  had provided cooperation and evidence to the other pilot.  By letter dated December 8, Cormican

25  demoted Williams.  A reasonable jury could infer that the cooperation was the true reason for the

26  demotion.  The close timing of these two events (three days apart) will support a verdict of

27  retaliation (Mot. Summ. J. at 9, Cormican Dep. 140–142, Williams Exh. 27 at 2, 5).

28

United States District Court
Northern District of California

1      With respect to United's defense based on after-acquired evidence, a jury will have to

2   decide whether United really would have fired Williams for eavesdropping on a supervisor's call

3   or for the other reasons now proffered.

4      United objects to much of Williams' evidence.  United has not complied with Local Rule

5   7-3(c), which requires evidentiary objections within its reply.  The objections are denied on that

6   ground.  Regardless, the evidence cited in this order and its companion addressing the Wiretap

7   Act is admissible with one partial exception.  United objects to Smith's email to "Kim Phillips,

8   and Garrison[] Phillips," for many reasons including that it states a legal conclusion.  This

9   objection is **SUSTAINED** with respect to the word "discrimination."  The remainder will be

10  admissible if Smith is subpoenaed.

11     Williams has withdrawn his ERISA Section 510 claim, so United's motion on that claim is

12  **DENIED AS MOOT**.  The motion for summary judgment on all remaining claims is **DENIED**.

14       **IT IS SO ORDERED.**

16  Dated:  January 8, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

5